UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:20-CV-24528

ALEXIS LOPEZ,

    Plaintiff,

v.

CIBONEY, INC. and
JOSE R. MORALES,

    Defendant.
_____/

### DEFENDANTS, CIBONEY, INC. AND JOSE R. MORALES' MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

    Defendants, CIBONEY, INC. ("Ciboney") and JOSE R. MORALES ("Morales")(collectively, "Defendants"), by and through undersigned counsel, and pursuant to Rule 11 of the Federal Rules of Civil Procedure, moves this Court for the imposition of sanctions, including an award of attorneys' fees and costs against Plaintiff, ALEXIS LOPEZ (hereinafter "Plaintiff" or "Lopez"), his attorneys, Brian H. Pollock, Esq. (hereinafter "Attorney Pollock") and Toussaint M. Cummings, Esq. (hereinafter "Attorney Cummings"), and the Fairlaw Firm (hereinafter the "Fairlaw") as the legal claims contained in the complaint are not warranted by existing law or by a non-frivolous argument for the extension or modification of the law. In support of this Motion, Defendants state:

### I. INTRODUCTION

    This is an action for minimum wage violations under the Fair Labor Standards Act ("FLSA"). Plaintiff has wrongfully alleged that Defendants "took control of all of the tips" from Plaintiff by either keeping the tip for themselves and/or distributing such tips to traditional non-tipped employees by creating a "tip pool," that he attended trainings at Ciboney but was not paid the applicable minimum wage and that he was forced to perform side work, while not earning tips, which constituted in excess of 20% of his work time. However, Defendants' documents clearly show that Plaintiff was a tipped employee, did not share his tips with other employees and was properly compensated under the FLSA.

## II. STATEMENT OF FACTS

Plaintiff filed a Complaint alleging minimum wage violations against Ciboney and Morales on November 3, 2020 **[ECF No. 1].** Ciboney is a family owned restaurant located in Miami Dade, Florida and Morales is the owner of Ciboney. Plaintiff worked for Ciboney as a server from October 2014 to March 30, 2020 **[ECF No. 1].** Due to the COVID-19 Pandemic, forcing Ciboney to shut down in March 2020 in accordance with a City Ordinance.[1] All employees, including Plaintiff, were laid off. After Ciboney reopened, Defendants reached out to Plaintiff who refused to come back to work.[2]

As a server, Plaintiff was a tipped employee **[ECF No. 1].** In accordance with the FLSA and Plaintiff's status as a tipped employee, Plaintiff was paid $3.02 less than the Florida minimum wage during the relevant time period. Because Ciboney was compliant with the FLSA, it was entitled to this $3.02 "tip credit." The relevant time period in this case is from November 3, 2017 or November 3, 2018, depending on whether Plaintiff is able to prove Ciboney willfully violated the FLSA, which he cannot.

Contrary to the evidence before this Court and that previously produced to Plaintiff and his Counsels, Plaintiff has wrongfully alleged that Defendants "took control of all of the tips" from Plaintiff by either keeping the tip for themselves and/or distributing such tips to traditional non-tipped employees by creating a "tip pool." **[ECF No. 1]**. Plaintiff has further alleged that he attended trainings at Ciboney but was not paid the applicable minimum wage and that he was forced to perform side work, while not earning tips, which constituted in excess of 20% of his work time. **[ECF No. 1].**

***Defendants' Rule 26 Disclosure Evidence their Entitlement to the Tip Credit and the Absence of any FLSA Violations***

Documentation produced by Defendants and in Plaintiff's possession does not reflect any FLSA violations. Defendants served Rule 26 Disclosures on Plaintiff and his Counsel, which contained a list of 20 witnesses and 16 documents.[3] The documents included Plaintiff's 2017, 2018, 2019 and 2020 Punch in Punch Out Reports, Earnings Statements and Tip Reports

---

[1] *See October 19, 2021 Affidavit of Laura Cardenas,* attached hereto as Exhibit A.
[2] *See* Ex. A.
[3] *See Defendants' Rule 26 Disclosure,* attached hereto as Exhibit B.

(collectively, "records").[4] The records reflect the time Plaintiff punched in and out of work, his hourly rate during the relevant time period, the total hours he worked in a certain pay period and the total amount of tips he received in credit and debit card charges. Plaintiff also received cash tips, which are not reflected in the attached tip reports. Plaintiff received the cash tips **in addition** to the debit and credit card tips listed on the tip reports. A review of the records for the time period of November 3, 2017 to March 22, 2020 reflects as follows:

- In 2017, Plaintiff was paid *$5.08 per hour*.[5] The 2017 Tip Reports for Plaintiff also reflect the total amount of tips he received for each pay period.[6] When his hourly rate is multiplied by the total hours he worked and added to the total tips he earned in a specific period, the 2017 records reflect Plaintiff made no less than *$14 per hour* from October 23, 2017 to December 31, 2017.[7]

- In 2018, Plaintiff was paid *$5.23 per hour*.[8] When his hourly rate is multiplied by the total hours he worked and added to the total tips he earned in a specific period, the 2018 records reflect Plaintiff made no less than *$13 per hour* from January 1, 2018 to December 30, 2018[9].

- In 2019, Plaintiff was paid *$5.44 per hour*.[10] When his hourly rate is multiplied by the total hours he worked and added to the total tips he earned in a specific period, the 2019 records reflect Plaintiff made no less than *$10 per hour* from December 31, 2018 to December 29, 2019.[11]

- In 2020, Plaintiff was paid *$5.54 per hour*.[12] When his hourly rate is multiplied by the total hours he worked and added to the total tips he earned in a specific period, the 2020 records reflect Plaintiff made no less than *$10 per hour* from December 30, 2019 to March 22, 2020[13].

---

[4] *See* Ex. B.
[5] *See 2017 Punch in Punch Out Reports,* attached hereto as Composite Exhibit C.
[6] *See 2017 Tip Reports* attached hereto as Composite Exhibit D.
[7] *See* Composite Exhibit 2 attached to Ex. A.
[8] *See* Ex. C.
[9] *See* Composite Exhibit 2 attached to Ex. A.
[10] *See* Ex. C.
[11] *See* Composite Exhibit 2 attached to Ex. A.
[12] *See* Ex. C.
[13] *See* Composite Exhibit 2 attached to Ex. A.

The documents produced also include a Notice to Employees Minimum Wage in Florida[14] form ("Notice"). This Notice was provided to and signed by Plaintiff and indicated the Florida minimum for tipped employees. In addition to this Notice, Plaintiff was also aware of his status as a tipped employee as it was communicated to him by Ciboney's owner, Laura De Cardenas ("Ms. Cardenas").

Plaintiff was also provided a series of text messages between Plaintiff and Ms. Cardenas. On May, 2020, Ms. Cardenas reached out to Plaintiff to ask him to come back to work. He advised her that he could not come in because he was sick.[15] A few weeks later, Plaintiff advised another employee that he was not coming back to work.[16] When Ms. De Cardenas contacted Plaintiff to inquire whether he was truly not coming back to work, Plaintiff failed to respond.[17]

### *Plaintiff's Failure to Provide Any Evidence that he was Improperly Compensated*

Plaintiff's Rule 26 Disclosures listed only five witnesses, including Plaintiff, Ciboney Representative(s), Morales, Juan Carlos and Ms. Cardenas.[18] The documents he produced, including his paystubs for 2017 and 2018, reflect Plaintiff was paid the proper minimum wage and received sufficient tips to entitle Ciboney to the tip credit.[19]

### *Defense Counsel's Attempts to Discuss Defendants' Lack of Liability and Absence of FLSA Violations with Plaintiff's Counsel*

In addition to producing the above mentioned documents, the undersigned has made several attempts to discuss the Defendants' lack of liability and complete absence of FLSA violations with Plaintiff's Counsel. The undersigned has further communicated that like all restaurants that had to close because of the Pandemic, Ciboney is just beginning to crawl to its feet and that there was little resources for protracted litigation.[20] Despite obtaining this information and being in possession of documentation evidencing Plaintiff's claims to be unfounded, Plaintiff's Counsel failed to address the lack of liability within the documents

---

[14] *See Notice to Employees Minimum Wage in Florida Form,* attached hereto as Exhibit E.
[15] *See* Composite Exhibit 1 attached to Ex. A.
[16] *See* Composite Exhibit 1 attached to Ex. A.
[17] *See* Ex. A.
[18] *See Plaintiff's Rule 26 Disclosure,* attached hereto as Exhibit F.
[19] *See Plaintiff's Paystubs,* attached hereto as Exhibit G.
[20] *See Email Thread Correspondence with Plaintiff's Counsel,* attached hereto As Exhibit H.

produced and made an unfounded demand to the Defendants.[21] Plaintiff's Counsels' failure to not only conduct an investigation prior to filing suit but also to completely turn a blind eye to the lack of evidentiary support for his client's false claims and to continue to knowingly engage in unfounded litigation against a small family owned restaurant recovering from a pandemic should provide the grounds for this Court to grant the Defendants' Motion for Sanctions, as further detailed below.

### III.  SUMMARY OF ARGUMENT

While it cannot be disputed that Rule 11 sanctions are considered severe, such sanctions are appropriate where, as here, Plaintiff and his counsels, Attorneys Pollock and Cummings, filed a frivolous claim against Defendants for minimum wage violations under the Fair Labor Standards Act ("FLSA"). Neither the facts of this case nor the case law supports such a claim against Defendants. Had Attorney Pollock conducted a reasonable pre-suit investigation, it would have been readily apparent that Lopez was properly compensated under the FLSA. By filing this action, Attorneys Pollock and Cummings either failed to conduct the requisite investigation, or outright ignored the information that such an investigation yielded. Under either scenario, the attorneys' conduct is sanctionable under Rule 11 of the Federal Rules of Civil Procedure.

Based on the facts uncovered to date and the prevailing case law, any reasonable attorney would have realized that Lopez was properly compensated pursuant to the FLSA. However, Attorneys Cummings and Pollock refuse to dismiss the instant action and instead, continue to churn the case. As a result of counsel's unreasonable conduct, Ciboney and Morales continue to incur needless fees and expenses defending a claim that should never have been filed. Ciboney is a small family-owned restaurant still recuperating from the damage of the COVID-19 Pandemic. Under these circumstances, sanctions are the only way to undo the financial harm caused by Plaintiff and his Counsels' conduct and deter them from filing frivolous litigation in the future.

To be sure, counsel has an affirmative obligation to conduct a reasonable investigation of the factual and legal basis for his claim before filing suit. *Worldwide Primates, Inc., v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Further, counsel must dismiss the lawsuit once information

---

[21] *See* Ex. H.

comes to light demonstrating the baseless and frivolous nature of the claims. Here, Plaintiff and his Counsels have been apprised of the frivolity of this case since its inception. Indeed, the undersigned has repeatedly informed Plaintiff's Counsels of the lack of liability in this case and has produced pertinent documentation reflecting such. Plaintiff's counsel ignored the warning and continued to pursue this meritless claim.

Attorney Pollock and Cummings' doubts of the validity of this claim, if any, should have been dispelled after the receipt of Defendants' Rule 26 Disclosures. The records provided to Plaintiff make it abundantly clear that he was properly compensated, Defendants PROVIDED Plaintiff ALL HIS TIPS, there was no "tip pool" and Defendants were entitled to the tip credit under FLSA.

As a result of Plaintiff and Attorney Pollock and Cummings' unwillingness to dismiss this claim, the undersigned sent them a Rule 11 letter on October 8th, 2021 (together with a draft of this motion) informing them that if the lawsuit was not dismissed with prejudice within the twenty-one (21) day safe harbor period, Defendants would file its Motion for Sanctions. *See Rule 11 Safe Harbor Letter, attached as Ex. F.* Plaintiff and Attorneys Pollock and Cummings ignored Defendants' letter and have failed to dismiss the Complaint. As such, sanctions are warranted and Defendants are entitled to receive its attorneys' fees and costs from Plaintiff, Attorneys Pollock and Cummings, and the FairLaw Firm.

### IV.     LEGAL STANDARD FOR RULE 11 SANCTIONS

Rule 11 sets forth the standards that attorneys and parties must meet when filing pleadings, motions, or other papers, and establishes the circumstances under which sanctions may be imposed. The primary purpose of Rule 11 is to deter baseless filings in district court. *Mike Ousley Productions, Inc. v. WBJF-TV*, 952 F.2d 380, 382 (11th Cir. 1992);[22] *Smith v. Smith*, 184 F.R.D. 420, 421 (S.D. Fla. 1998) ("The central purpose of Rule 11 of the Federal Rules of Civil Procedure is to deter baseless filings in district court."). Rule 11 provides, in relevant part, that "the signature of an attorney constitutes a certificate by the signer that . . . . to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded

---

[22] Rule 11 was amended in 1993. In addition to adding the 21-day "safe harbor" provision that allows litigants to withdraw potentially offending filings, the new version of the rule also "emphasizes an attorney's continuing obligations to make inquiries," allowing sanctions "when an attorney continues insisting upon a position after it is no longer tenable." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir 1996).

in fact. [Upon finding a] violation of this rule, the court . . . .shall impose upon the person who signed it . . . . an appropriate sanction which may include . . . . reasonable expenses incurred because of the filing of the [violative document], including a reasonable attorney's fee." Fed. R. Civ. P. 11. Rule 11 Sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for improper purposes." *Jones v. International Riding Helmets, Ltd.,* 49 F. 3d 692, 694 (11th Cir. 1995).

Rule 11 places an affirmative duty on an attorney to inquire into both the legal and factual basis of a claim before filing suit. *See Wordwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1255 (11th Cir. 1996) (affirming sanctions award where attorney failed to conduct any independent inquiry into long-time client's damages claims); *see also Gutierrez v. City of Hialeah,* 729 F. Supp. 1329 (S.D. Fla 1990). The affirmative duty to inquire into the factual basis of a complaint prohibits an attorney from relying solely on "personal interpretation of the facts, conclusory allegations of fact, speculation, suspicion, rumor or surmise" to sustain reasonable belief in those facts and thus avoid liability under Rule 11 for failure to make reasonable inquiry into facts before signing a document. *See Gutierrez v. City of Hialeah,* 729 F. Supp. 1329 (S.D. Fla 1990). If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. *See Wordwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1255 (11th Cir. 1996). The reasonableness of an inquiry may depend on such factors as how much time was available to the signer and whether he was forced to rely on a client for the underlying facts. *See Mike Ousley Productions, Inc. v. WJBF-TV,* 952 F. 2d 380, 382 (11th Cir. 1992). An attorney also has an affirmative duty to adequately research applicable legal precedent. *Gutierrez,* 729 F. Supp. At 1322. ("A signer's inquiry is not reasonable if the law is discoverable by using basic legal research tools, such as citations, digests, annotated codes, or computerized searches, if applicable").

In this Circuit, when determining whether sanctions are appropriate under Rule 11, a court must first determine whether the party's claim is objectively frivolous in view of the facts or law and if so, whether the person who signed the pleadings should have been aware that it is frivolous had he made a reasonable inquiry. *See Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1992).  If the attorney failed to make a reasonable inquiry, then the court must

impose sanctions even if the attorney possesses a good faith belief that the claims were sound. *Id.*

Here, the Court should impose sanctions because Plaintiff Counsels failed to make a reasonably inquiry before filing suit and filed the Complaint in bad faith for improper purposes. A reasonable inquiry by Counsel would have revealed that his client's minimum wage FLSA claim against Defendants is objectively frivolous. Plaintiff has provided no evidentiary proof to support his claims in his bare bones Rule 26 Initial Disclosures. Had Plaintiff Counsel's made a reasonable inquiry prior to filing suit, he would have received all records produced by Defendants, which confirm that Plaintiff was a tipped employee, paid the proper hourly rate and earned sufficient tips to entitle Defendants to the "tip credit." Additionally, Plaintiff's Counsel does not have a legitimate excuse for his failure to conduct a reasonable inquiry. Plaintiff's Counsel has been informed that his claim is frivolous on numerous occasions since filing suit. The Plaintiff's bare bones Rule 26 Disclosures, multiple conversations between counsels and Defendants' document production clearly provide notice that Defendants maintained proper records of Plaintiff's correct minimum wage, did not violate the FLSA and were therefore entitled to the "tip credit" under the FLSA.

## V.     ARGUMENT

### A. SANCTIONS ARE WARRANTED BECAUSE PLAINTIFF'S COUNSEL FAILED TO MAKE A REASONABLE INQUIRY OF HIS CLIENT'S FLSA CLAIM.

An employee who brings a lawsuit under the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages bears the initial burden of proving that she performed the work for which she was not properly compensated. *Santelices v. Cable Wiring*, 147 F.Supp.2d 1313, 1328 (S.D.Fla.2001) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superceded by statute on other grounds as stated in Carter v. Panama Canal Co.,* 463 F.2d 1289, 1293 (D.C.Cir.1972)). In *Mt. Clemens,* the Supreme Court recognized that "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records," but "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." 328 U.S. at 687, 66 S.Ct. 1187. In "such a situation ... an employee has carried out his burden if he proves that he has in fact performed the work for which he was improperly compensated and ***if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."*** *Id.*

The "burden then shifts to the employer to come forward with the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88, 66 S.Ct. 1187.

The FLSA requires that employers pay employees a minimum wage, establishes the maximum hours that an employee can work at a regular pay rate, and requires overtime pay for hours worked in excess of forty hours per workweek. *29 U.S.C. § 201, et seq.* Pursuant to the FLSA, a " '[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *29 U.S.C. § 203(t)*. Under the FLSA, employers of tipped employees (i.e. those who customarily and regularly receive more than $30 a month in tips) may consider such tips as part of their wages. *Perez v. Salermo Seafood, Inc.,* 548 F. Supp. 2d 1340, 1347 (S.D. Fla. 2008). The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit." *Id.* The Florida minimum wage law also allows a "tip credit." The "tip credit" allowed by Florida law is the same as that allowed by the FLSA, $3.02. *Id.; Fla. Const. Art.* 10, § 24(c); *Fla. Stat.* § 448.110.

The following requirements must be met to satisfy the "tip credit" in Section 203(m): (1) the tip credit must be claimed for qualified tipped employees; (2) the employees must receive proper notice of Section 203(m); and (3) all tips received by the employees must be retained by them. *29 U.S.C. § 203(m).* As to the second element, an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations. *Pelon v. Business Representation Intern., Inc.,* 528 F. Supp. 2d 1306 (S.D. Fla. 2007)(noting that "the FLSA" does not require a rigorous explanation to employees about how the tip credit works."). Employers do not have to explain the tip credit to employees, however; it is enough to inform them of it. *Id.*

In *Perez,* the Court found that the defendants were entitled to the tip credit by crediting the defendant's testimony that he explained the tip credit to his employees. 548 F. Supp. 2d at 1348. The Court further commented that the Plaintiff failed to present any evidence that she was required to share her tips with non-tipped employees. *Id.* Because defendants were entitled to the tip credit, the Court found that the Plaintiff had not demonstrated that she was compensated at an effective hourly rate below the Florida minimum wage rate for her scheduled shifts. *Id.*

In this case, it is undisputed that Plaintiff was a tipped employee as the tip records

evidence that he was earning more than $30 in tips per month. Plaintiff also received proper notice of the tip credit via the Notice he signed and conversations he had with Ms. Cardenas. With regard to the third element, Plaintiff has completely failed to provide any evidence that he shared his tips with other employees, just like the *Perez* plaintiff. The tip reports are titled with Plaintiff's name on them and the tip amounts are also reflected on his personal paystubs, which he produced in his own Rule 26 Disclosures.

A thorough investigation and review of Defendant's documents would have alerted Plaintiff's Counsel that his client's claims that he was compensated at an hourly rate below the Florida minimum wage are baseless. Including the tip credit, Plaintiff was paid an hourly rate of $8.10[23] ($5.08 + $3.02 tip credit) in 2017, $8.25[24] ($5.23 + $3.02 tip credit) in 2018, $8.46[25] ($5.44 + $3.02 tip credit) in 2019 and $8.56[26] ($5.54 + $ 3.02 tip credit) in 2020.[27] This does not include cash tips which were paid directly to the Plaintiff.

Plaintiff's claims that Defendants were not entitled to the tip credit are equally as baseless. When Plaintiff's hourly rate is multiplied by the total hours he worked and such amount added to the total tips he earned in a specific period, Ciboney's records reflect Plaintiff made no less than $14 per hour from October 23, 2017 to December 31, 2017, no less than $13 per hour from January 1, 2018 to December 30, 2018, and earned at least $10 per hour from December 31, 2018 to March 22, 2020. As stated above, the FLSA requires that an employer who uses the tip credit ensures that its employee makes at least the applicable minimum wage. Plaintiff's earning of at least $10 per hour is above the applicable Florida minimum wage each year from 2017 to 2020. Defendants were therefore entitled to the tip credit and did not violate the minimum wage requirement of the FLSA.

Additionally, Plaintiff's Counsel does not have a legitimate excuse for his failure to conduct a reasonable inquiry. *Ousley Productions, Inc.,* 952 F. 2d at 380. Counsel for Plaintiff had sufficient time to conduct a reasonable investigation as Plaintiff stopped working at Ciboney in March 2020 and Plaintiff's Counsel filed his complaint on November 3, 2020, a period of close to 8 months during which he could have thoroughly investigated the claim. If Counsel was

---

[23] The Florida minimum wage was $8.10 in 2017.
[24] The Florida minimum wage was $8.25 in 2018.
[25] The Florida minimum wage was $8.46 in 2019.
[26] The Florida minimum wage was $8.56 in 2020.
[27] *See* Ex. D.

not aware of Plaintiff's frivolous claims at the time of filing the Complaint, Counsel was surely aware of the lack of factual basis for her claim after multiple conversations between counsels and Defendants' document production.

### B. PLAINTIFF'S COMPLAINT WAS FILED IN BAD FAITH FOR IMPROPER PURPOSES.

Plaintiff has wrongfully alleged that Defendants "took control of all of the tips" from Plaintiff by either keeping the tip for themselves and/or distributing such tips to traditional non-tipped employees by creating a "tip pool," that he attended trainings at Ciboney but was not paid the applicable minimum wage and that he was forced to perform side work, while not earning tips, which constituted in excess of 20% of his work time. Interestingly enough, Plaintiff provides no documentation or proof to support his claims. As stated above, Defendants' documents clearly show that Plaintiff was a tipped employee, did not share his tips with other employees and was properly compensated under the FLSA. Before he filed suit, Plaintiff knew that these allegations were not true. This is not an instance where the plaintiff does not have personal knowledge.

In addition to producing the above mentioned documents, the undersigned has made several attempts to discuss the Defendants' lack of liability and complete absence of FLSA violations with Plaintiff's Counsel. The undersigned has further communicated that like all restaurants that had to close because of the Pandemic, Ciboney is just beginning to crawl to its feet and that there was little resources for protracted litigation. Despite obtaining this information and being in possession of documentation evidencing Plaintiff's claims to be unfounded, Plaintiff's Counsel failed to address the lack of liability within the documents produced and made an unfounded demand to the Defendants. Plaintiff's Counsels' failure to not only conduct an investigation prior to filing suit but also to completely turn a blind eye to the lack of evidentiary support for his client's false claims and to continue to knowingly engage in unfounded litigation against a small family owned restaurant recovering from a pandemic is evidence that Plaintiff is attempting to harass and coerce Defendants into obtaining monies he is not entitled to as evidenced by the total lack of factual and legal support for his claims. Such an improper purpose provides the grounds for this Court to grant the Defendants' Motion for Sanctions. *See McDonald v. Emory Healthcare Eye Center,* 391 Fed. Appx. 851 (11th Cir. 2010)(holding district court did not abuse its discretion in granting Rule 11 Motion  based on sanctioned party's numerous Rule 11(b)

violations, such as filing pleadings for the improper purpose of harassing the defendants and presenting claims that were frivolous and had no legal or factual support).

### C. THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND COSTS AND STRIKE PLAINTIFF'S COMPLAINT.

The Court should impose sanctions against Plaintiff and his counsels, including an award of the reasonable attorneys' fees and costs expended by Defendants in responding to Plaintiff's frivolous pleadings, conducting discovery, and preparing the instant motion. The Court has broad discretion to determine appropriate sanctions under Rule 11. *See Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).

Indeed, "[r]ule 11 sanctions are richly deserved in this case to punish plaintiff's conduct and deter future abuses against litigants and the judicial process." *Dean v. ARA Envtl. Services, Inc.*, 124 F.R.D. 224, 227 (N.D. Ga. 1988). Courts must assess Rule 11 sanctions to "deter repetition of the conduct" that violates the Rule. Fed. R. Civ. P. 11(c)(4). Rule 11 does not list factors a court should consider in deciding the appropriate sanction for a Rule 11 violation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993). Rather, a trial court has broad discretion to choose the nature and the amount of the sanction to achieve the deterrent purposes of Rule 11. *See DiPaolo v. Moran*, 407 F.3d 140, 146 (3rd Cir. 2005).

The Eleventh Circuit has noted District Court judges' broad discretion in imposing sanctions to enforce Rule 11's "mandate against filing groundless complaints," stating**:**

> If Rule 11 is to be effective, a District Court Judge, in his or her broad discretion, must be able to impose whatever sanctions appear appropriate to combat the expense, inefficiency and backlog which the judicial process suffers because of wrongfully filed complaints and motions. It is the District Court Judge who sits at this bottleneck and who most accurately perceives the harms which rightful litigants suffer because of Rule 11 violations. No one is better situated to perceive the measure of the sanction necessary to achieve the goals which the rule contemplates.

*Collins v. Walden*, 834 F.2d 961, 965-66 (11th Cir. 1987). Furthermore, the Eleventh Circuit approves dismissal with prejudice and an award of attorneys' fees and costs as an appropriate sanction for frivolous suits filed for an improper purpose. *See Taiyo Corp. v. Sheraton Savannah Corp.*, 49 F.3d 1514, 1515 (11th Cir. 1995) (affirming dismissal and imposition of monetary sanctions for action brought for improper purpose and not warranted by existing law or

nonfrivolous extension of law); *see also Dean v. ARA Envtl.*, 124 F.R.D. at 227 (imposing sanction of costs and attorney's fees on *pro se* litigant).

In light of the obvious evidence that Plaintiff and Plaintiff's Counsel brought this facially frivolous action against Defendants, and intend to pursue it knowing full well that Plaintiff's claims are unsupported by fact or any existing law, Defendants seek reasonable attorneys' fees incurred in bringing this Motion against Plaintiff. Plaintiff's Complaint should be dismissed but be dismissed with prejudice. *See Stelly v. Comm'r*, 761 F.2d 1113, 1116 (5th Cir. 1985) (per curiam) ("In the interest of justice we dismiss this appeal, and impose double costs and attorney's fees on the Stellys [who proceeded pro se] for bringing a frivolous appeal.") (citations omitted); *Allapattah Services, Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (noting that the court's inherent sanctioning power also includes the ability to strike frivolous pleadings or defenses). The Court should strike Plaintiff's Complaint with prejudice to prevent any additional waste of resources in resolving this meritless claim.

Both Plaintiff and Attorneys Pollock and Toussaint are aware of the Defendants' difficult financial position and have been explicitly and repeatedly warned by undersigned counsel that their attempts to pursue this baseless claim to the Court could subject them to Rule 11 sanctions and they have had ample opportunity to withdraw this claim. They have, however, deliberately chosen to disregard that notice and instead, pursue additional discovery and further entrench themselves in their positions. At this point, sanctions are both proper and necessary.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court grant its Motion for Sanctions pursuant to Rule 11; that it dismiss Plaintiff's Complaint against Defendants *with prejudice*; that it grant to Defendants all of their reasonable attorneys' fees and expenses incurred as a direct result of the Rule 11 violations, as well as the reasonable expenses and attorneys' fees incurred in presenting Defendants' Motion; and that it award Defendants such other and further relief as this Honorable Court deems just and proper.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD FAITH CONFERENCE

I, the undersigned attorney, certify that, prior to filing this motion, Plaintiff's counsel was contacted via e-mail and telephonically on October 20, 2021, and requested to withdraw the Complaint. Plaintiff's counsel was also served with a copy of this Motion more than twenty-one

(21) days prior to filing of same, and still failed to withdraw the Complaint. Accordingly, there was an attempt to resolve this matter and no resolution was able to be obtained without Court intervention.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 29th of November, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Manuel Arthur Mesa, Esq., Mesa & Associates, P.A., Attorney for Plaintiff, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By:   /s/ *Reginald J. Clyne*
Reginald J. Clyne, Esq.
Florida Bar No.: 654302
Audrey-Jade Salbo, Esq.
Florida Bar No.: 119370
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
 *Attorneys for Ciboney, Inc. and Jose R. Morales*
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161
rclyne.pleadings@qpwblaw.com
Reginald.clyne@qpwblaw.com
Cecilia.quevedo@qpwblaw.com
Gcastro@qpwblaw.com